WATERFALL, ECONOMIDIS, CALDWELL,
   HANSHAW & VILLAMANA, P.C.
5210 E. Williams Circle, #800
Tucson, AZ  85711
(520) 745-7810

Barry Kirschner/SBN 005592/PAN 31284
bkirschner@waterfallattorneys.com
Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jeffery Wallace,<br><br>              Plaintiff,<br><br>vs.<br><br>Freeport-McMoRan Inc. Health & Welfare Plan, Plan Identification Number 597; and, The Hartford,<br><br>              Defendants. | D.C. No.<br><br>**COMPLAINT** |

Plaintiff Jeffery Wallace ("Wallace") alleges for his Complaint:

1. This dispute is within the jurisdiction of the United States District Court for the District of Arizona.  29 U.S.C. §1132 (a)(1)(B) and (a)(3). Venue is proper.

2. Wallace was a long term employee of Freeport-McMoRan ("Freeport") and a participant in the Defendant Freeport-McMoRan Inc.'s Short Term Disability Plan, a component plan of the Freeport-McMoRan Inc. Health & Welfare Plan, Plan Identification Number 597 ("Plan").  Freeport-McMoRan was then known as Phelps Dodge Corporation with its headquarters in Phoenix, Arizona.

3. The Freeport-McMoRan Inc. Plan is administered through its office in Phoenix, Arizona.

4. Defendant The Hartford Insurance Company ("Hartford") is an insurer which makes itself available to insure, and to administer Policies of insurance and

1

claims for Plans, including within Arizona and plans governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1101 et seq.

5. The relevant insurance group disability protection in which Wallace is a participant is part of a contract between the Plan and Hartford to provide benefits to employees such as Wallace. The Plan is within the scope of ERISA.

6. The purpose of Congress in enacting the Employee Retirement Income Security Act (ERISA) is described in 29 U.S.C. §1001(b):

> It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.
> 29 U.S.C. §1001(b).

7. All procedures which must be exhausted prior to bringing this civil action have been exhausted. This claim is ripe for decision by the United States District Court.

8. Defendants Hartford and Freeport owe a fiduciary duty to its Plan participants including Wallace.

9. Defendants have acted with bias in not providing a full and fair review of Wallace's claim for short term disability benefits, and related appeals.

10. Wallace had medical problems which became disabling by Spring 2016.

11. Defendants recognized Wallace was disabled and entitled to STD benefits effective March 18, 2016 through June 12, 2016.

12. Wallace returned to work June 10, 2016.

13. Medical ailments persisted and Wallace obtained additional medical work up including from a team of doctors at the Mayo Clinic in Rochester Minnesota, and with Dr. Christopher Marsh in Tucson.

14. Defendants again acknowledged disability and approved resumed STD benefits effective October 4, 2016.

15. As of October 21, 2016 Wallace's prescribed medications included Duloxetine, Neurontin, Naltrexone, Liothyronine, Levothyroxine, and Lyrica.

16. Defendants approved continued benefits noting: "Med supports ext of claim as ee is unable to perform his occ as a Sr. Engineer which involves Open pit above ground combination of driving, short range mine planning, driving in pit, working on computer. In a vehicle 20% of the day. Up to 10 hrs per day. . . ." In context, "ee" refers to employee Wallace.

17. Wallace's STD benefits were terminated effective November 20, 2016.

18. Prior to being represented by counsel, Wallace timely appealed the termination of his STD benefits.

19. The Wallace appeal was denied.

20. By letter dated January 18, 2017, Hartford denied Wallace's next appeal. Hartford's letter accepted the diagnosis of fibromyalgia. It also stated: "There are no objective findings noted on the attending physicians' statement. Upon review of all the medical information contained in your file, we are unable to conclude that your medical condition prevents you from performing the duties of your occupation including driving and lifting 30 lbs."

21. Wallace again appealed, to Freeport on February 1, 2017. This appeal was denied by a May 22, 2017 letter from the Plan Administrator in Phoenix, Arizona.

22. Through all appeals, Defendants never obtained a functional capacity evaluation ("FCE"), or paid for an independent medical examination ("IME").

23. To assist in denying Wallace's claim, Defendants hired a doctor, Amido Hameed, to perform a "paper review" without examining Wallace. The reviewer worked through a for-profit organization called "Medical Review Institute of America, Inc.".

24. The Hameed medical review described that a January 5, 2017 "….note verifies diagnoses of fibromyalgia, hypogammaglobullnemia, history of Valley Fever and history of urinary tract infections. Hameed's conclusion was there is no objective medical evidence in the attached medical records to support inability to perform the essential duties as described.

25. The termination of benefits is based on Defendant's statements that there is no objective evidence in support of the claim.

26. The termination of benefits is not based on objective findings which contradict the history of Wallace's complaints of fibromyalgia and related diminished function.

**WALLACE AND HIS OCCUPATION**

27. Wallace is a Mining Engineer and has been since 1993 for Freeport, then known as Phelps Dodge. From 2002-2013 Wallace worked at the Sahuarita mine in Pima County, Arizona.

28. Wallace has long worked in an occupation which includes responsibilities to drive in an open pit mine up to 10 hours/day.

29. The regular occupation performed by Wallace is critical to the operation of a mine and the safety or employees and others who may be at or near the mine site.

30. As a Senior mining engineer, Wallace's substantial and material duties include a combination of driving, short range mine planning, driving in the pit of the mine, and working on a computer. Wallace's employer estimates performance for his regular occupation includes being in a vehicle 20% of the day. Sometimes up to 10 hours in a vehicle in a single day is required.

31. The terrain in the pit is unpaved, at times very steep, and more challenging than driving on a public highway.  Walking in the pit includes walking near explosives, loose rock, and uneven terrain, sometimes complicated by significant slope.  Driving in the pit is rough requiring multi-tasking, recognizing changing hazards, complex

4

intersections, steep drops or climbs, and coordinating movement with very large moving machinery at different rates of speed. In short, it is dangerous to walk or drive in the pit while fatigued or influenced by the effect of powerful medications even when they are prescribed for a recognized condition.

32. After becoming aware of Wallace's symptoms and medical limitations in November 2016, his employer advised Hartford that the limitations placed by Wallace's medical providers could not be accommodated for Wallace to perform his occupational duties.

33. The Physical requirements of the Mining Engineer is described by Wallace's employer:

    a. Work is in a mine or manufacturing plant setting, which may include exposure to extremes in temperature and humidity, moving mechanical parts, risk of electrical shock, toxic chemicals, explosives, fumes or airborne particles.

    b. While performing the duties of this job, the employee is regularly required to stand, sit, demonstrate manual dexterity, climb stairs and ladders, work on elevated platforms, talk, hear and see.

    c. Occasionally may be required to lift moderately heavy objects (up to 30 pounds) during the course of the workday.

    d. Personal protective equipment is required when performing work in a mine, outdoor, manufacturing or plant environment, including hard hat, hearing protection, safety glasses, safety footwear, and as needed, respirator, rubber steel-toe boots, protective clothing, gloves and any other protective equipment as required.

34. Freeport requires a work environment in which operation of heavy equipment or driving in mine locations is not consistent with certain medications even if those medications are prescribed for medical ailments.

**WALLACE AND FIBROMYALGIA**

35. Wallace was diagnosed with fibromyalgia in 2005. He was able to continue work on a continual basis until 2016.

36. Wallace's fibromyalgia is associated with the onset of pain in multiple locations and fatigue.

37. Wallace was examined by a team at the Mayo Clinic in Rochester, Minnesota in the summer of 2016. Findings and assessments of the medical team include that Wallace meets the criteria for diagnosing fibromyalgia using either the 1990 ACR Fibromyalgia criteria or the 2010 ACR fibromyalgia criteria.

38. The Mayo Clinic team medical work up included a medical note with the Heading *PHYSICAL EXAMINATION* which states:

> Refer to HPI for mood assessment.
> Tender Points: 15/18 standard tender points are positive: right occiput, left occiput, right low cervical, left low cervical, right trapezius, left trapezius, right gluteal, left gluteal, right greater trochanter, left greater trochanter, right second rib, left second rib, right lateral epicondyle, left lateral epicondyle, right medial fat pad proximal to joint line of knee, dorsum on right forearm (control point), left thumb nail (control point).
>
> In addition, the patient is diffusely tender over most of the muscle groups and a number of joint regions.
>
> See note from Sanjeev Nanda MD dated 7/25/2016 for more details of examination.

39. Following examinations and multiple visits the Mayo Clinic diagnoses were: #1 Fibromyalgia; #2 Chronic multifactorial fatigue; #3 Sleep Disorder; and #4 Deconditioning.

40. On September 6, 2016, and October 10, 2016, Wallace was examined by Dr. Christopher Marsh in Tucson, Arizona. Marsh's examination found musculoskeletal abnormalities including tenderness and myalgias at multiple sites. His assessment included chronic fatigue and generalized myalgias in proximal muscle groups. Marsh

assessed myalgias at multiple sites, noting that the afflicted proximal muscle groups also showed elevated CPK.

41.  As of November 2016, Wallace was prescribed medications which cautioned against using heavy machinery of difficult driving.  For instance warnings for the prescribed mediation taken by Wallace.  Lyrica includes:

> 17.5  **Dizziness and Somnolence**
> *Counsel patients that LYRICA may cause dizziness, somnolence, blurred vision and other CNS signs and symptoms. Accordingly, advise patients not to drive, operate complex machinery, or engage in other hazardous activities until they have gained sufficient experience on LYRICA to gauge whether or not it affects their mental, visual, and/or motor performance adversely.*  (Italics added.)

42.  Other medications taken as prescribed by Wallace, including Deluxatene, also contain warnings that side effects could cause dizziness.

43.  Wallace's medical ailments did not improve from disabling to non-disabling as of the time his benefits were terminated effective November 20, 2016.

44.  One or more of Wallace's treating physicians have limited and/or restricted Wallace's ability to return to work for all relevant times at issue since November 20, 2016.

45.  By a Work Status Report on a Freeport form, Dr. Tecaya restricted Wallace to work no more than 5 hours/day; 20 hours/week; and to do no overhead work, repetitive overhead work, climbing of ladders, use of power tools, operating heavy machinery or stair climbing.  Wallace was also limited in his lifting and sitting abilities.

46.  Freeport terminated Wallace's lengthy employment by certified letter of April 12, 2017, because the mining company was not able to accommodate the restrictions listed.

. . . .

. . . .

. . . .

**DEFENDANTS HAVE USED AN ARBITRARY AND INAPPROPRIATE STANDARD OF REVIEW IN TERMINATING WALLACE'S STD BENEFITS**

47. By letter dated May 22, 2017 Defendants denied the final appeal of Wallace to have his STD benefit reinstated. The reason given for the denial was: "The basis for the denial are the medical records (including the restrictions and limitations) do not support being unable to perform the essential duties of occupation beyond November 20. 2016. The BAC obtained an independent third party medical evaluation by MRI that determined there was no objective medical evidence."

48. The letter gave no weight to the findings of fibromyalgia diagnosed multiple times and places including at the Mayo Clinic in Rochester Minnesota in summer 2016.

49. The diagnostic analysis concluding Wallace suffered from fibromyalgia included references to palpation and trigger points and tenderness on physical examination from physicians treating Wallace.

50. Nowhere in the Policy definitions of the relevant Plan is there a requirement that the medical ailment causing disabling symptoms needs to have those symptoms, or the degree of those symptoms, measurable as if a laboratory numerical analysis or a radiology image finding were necessary.

51. Fibromyalgia has been a long recognized physical medical ailment which is often accompanied with disabling features. E.g. *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc.*, 125 F.3d 794, 799 (9th Cir. 1997).

52. The difficulty of measurement of diseases including fibromyalgia has been the subject of discussion by the United States Court of Appeals where the consensus is that it is not legitimate to require an unprovable quality of evidence to prove a disease such as fibromyalgia or the measurement of pain or discomfort from the disease. E.g., *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676-678 (9th Cir. 2011).

53. Wallace has support for his claim from multiple treating physicians who had performed many diagnostic techniques including physical examination. Defendants had no medical doctor, or physician of any sort, who denied the existence of fibromyalgia in Wallace.

54. The Defendants did not have Wallace personally examined in an Independent Medical Examination (IME) or even a Functional Capacity Examination (FCE) before terminating his benefits and denying his appeal.

55. Defendants have improperly discredited the history of medical ailments described by Wallace in multiple medical histories and the opinions and medical examination assessment of Wallace's treating physicians.

## COUNT 1
## DECLARATORY JUDGMENT

56. Wallace incorporates all paragraphs above as if fully set forth herein.

57. Defendant(s) have a financial conflict of interest which has influenced STD decision making adverse to the interests of fairness and of Wallace.

58. Defendants have breached their fiduciary duties by not performing their duties solely in the interests of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries as required by ERISA, 29 U.S.C. § 1104(A)(1).

59. Defendants improperly terminated the Wallace claim for STD benefits.

60. Wallace seeks a declaration by this Court that he is entitled to short term disability benefits, attorneys' fees and costs, and all other relief including equitable relief for detriment caused Wallace by procedural irregularities of Defendants, particularly Hartford. Wallace asks for a Declaratory Order that:

1. Short Term Disability benefits should be paid for the entire 26 week period of Wallace's eligibility;

2. Wallace be able to submit his claim for Long Term Disability

(LTD) without punishment or negative assessments made against him of the termination of the STD claim;

      3.    Wallace be awarded pre-judgment interest as the Court deems just.

RESPECTFULLY SUBMITTED this 16th day of January, 2018.

                              WATERFALL, ECONOMIDIS, CALDWELL,
                              HANSHAW & VILLAMANA, P.C.

                              By    */s/ Barry Kirschner*
                                    Barry Kirschner
                                    Attorney for Plaintiff